COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JOSEFINA MAESE NEVAREZ and

RUDOLFO MAESE,


 Appellants,


v.


HERB EHRLICH, AS TRUSTEE,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00333-CV



Appeal from


 County Court at Law No. 3


of El Paso County, Texas


(TC # 2003-3156)





O P I N I O N



 Josefina Maese Nevarez and Rudolfo Maese appeal from a summary judgment granted in
favor of Herb Ehrlich, Trustee. For the reasons that follow, we affirm.

FACTUAL SUMMARY


 A number of people, including Roberto Horcasitas Maese, purchased annuity contracts from
First Service Life Insurance Company (First Service). When First Service failed, it was placed in
receivership on December 1, 1988. Pursuant to Article 21.28 of the Texas Insurance Code, the title
to all of the property of First Service, including rights of action, vested in the receiver on that date. 
Several lawsuits were filed by aggrieved parties seeking damages. El Paso Electric, which had bought
$70 million in annuities from First Service, filed suit in Travis County against the receiver seeking a
declaratory judgment that it had a valid, perfected and enforceable security interest in and to certain
collateral. (1) First Service also sought repayment from Maury Kemp and Triangle Electric of a $12
million loan. Other individual annuitants sought to perfect their claims which totaled about $12.8
million. Herb Ehrlich represented twenty-eight of those annuitants, including Jorge Gonzalez-Felix,
Individually and as Independent Executor of the Estate of Roberto Maese-Horcasitas. Another group
was represented by attorney Douglas Smith. Ehrlich's and Smith's clients filed suit against El Paso
Electric and other defendants. That suit contained RICO allegations and it was removed to federal
court. (2) The suits were eventually resolved by three settlement agreements. On April 14, 1993, the
53rd District Court incorporated and approved those three settlement agreements in an "Order
Approving Compromise of Claims" filed in cause number 454,774 in the 53rd District Court in Travis
County. The court's order referred to various parties as follows:

 "First Service"-- Jorge A. Gutierrez, P.C. as Special Deputy Receiver for First Service Life.


 "Creditor-Defendants"-- a group of creditors of First Service who were owners of annuities
and had filed a proof of claim with the receiver, and who were represented by Douglas Smith
or Herbert Ehrlich, P.C.


 "Claimants" -- four persons who were claimants to annuities of Roberto Maese-Horcasitas,
deceased, and who were represented by Herbert Ehrlich, P.C. 


 "Non-Settling Creditor-Defendants" -- Jose Sanchez-Soriano, Appellant Josephina Maese-Nevarez, Marisa P. de Olivas, Fabiola Maese de Crespo and Appellant Rodolfo Maese-Nevarez, all of whom alleged claims against El Paso Electric in the RICO Action.


The trial court found that the claims being asserted by the Creditor-Defendants, the Claimants, and
the Non-Settling Creditor-Defendants against El Paso Electric Company in the RICO Action arose,
if at all, out of injuries allegedly suffered by First Service, and such claims were the property and
assets of First Service. The three separate settlement agreements were attached to the order as
Exhibit A, Exhibit B, and Exhibit C. With respect to Exhibit B, which is at issue here, the judgment
states:

 It is FURTHER ORDERED, ADJUDGED AND DECREED that the Settlement
Agreement between El Paso Electric Company, the Creditor-Defendants and the
Claimants, in the form attached hereto as Exhibit 'B' is approved, and shall be binding
upon El Paso Electric Company and the Creditor-Defendants, the Claimants, their
agents, employees, officers, representatives, successors and assigns.


Under this settlement agreement, the Creditor-Defendants and Claimants would dismiss their suit
against El Paso Electric under Federal Rule of Civil Procedure 41(a)(1). (3) The order further provided
that upon approval of the Settlement Agreement by the Bankruptcy Court in El Paso Electric's
pending Chapter 11 proceeding, the Special Deputy Receiver, the Creditor-Defendants, and the
Claimants were to file a motion in the RICO Action asserting that the Special Deputy Receiver owns
the claims of the Non-Settling Creditor-Defendants against El Paso Electric and request dismissal
pursuant to Federal Rule of Civil Procedure 41(a)(2). (4) 

 In the settlement agreement referred to as Exhibit B, El Paso Electric made the following
agreement:

 EPE will vigorously and in good faith prosecute to conclusion, by final non-appealable
order or, in its sole discretion, by a settlement, the claim it has asserted pursuant to
Tex.Civ.Prac.&Rem.Code § 105.001 et. seq. in Cause No. 451,497 (the 'EPE § 105
Claim') at its own expense. If and when EPE makes any recovery, pursuant to its
EPE § 105 Claim, EPE will retain, and will be entitled to retain, one-third of the gross
amount of such recovery, and will pay the remaining two-thirds to a trust account for
the benefit of the Creditor-Defendants and the Claimants, naming Douglas C. Smith
and Herbert Ehrlich, as trustees. The trustees shall disburse such trust funds as
follows: first, to reimburse the Creditor- Defendants and the Claimants for all costs
and expenses paid or advanced by them in pursuit of their claims in the RICO Action,
the Receivership Proceeding and Cause No. 451,497; and thereafter, to all the
holders of approved annuity claims pro rata in proportion to the original
amount of their approved claims in the Receivership Proceeding. The Creditor-Defendants and the Claimants acknowledge and agree that, if the EPE § 105 Claim
is denied by a final non-appealable order of a court, then no sum shall be paid to them
pursuant to this paragraph, and EPE shall have no further obligation to the Creditor-Defendants or the Claimants. [Emphasis added].


 El Paso Electric eventually recovered funds under the "EPE §105 Claim" and it paid two-thirds of that amount to Douglas Smith and Herbert Ehrlich as ordered. Ehrlich received
approximately $1.167 million. Smith and Ehrlich accounted for expenses and paid the remaining
sums to their respective clients. Ehrlich paid approximately $800,100 to his clients. No monies were
paid to the Non-Settling Creditor-Defendants.

 Appellants later learned of the disbursal by Ehrlich and filed suit against him asserting that he
breached his fiduciary duty to them. Ehrlich filed a motion for summary judgment alleging that he
did not owe Appellants a fiduciary duty because he did not represent them in the prior suit and they
had refused to participate in the settlement agreement. Appellants also filed a motion for summary
judgment on their claim. The trial court granted summary judgment in favor of Ehrlich. SUMMARY JUDGMENT


 In a single issue, Appellants contend that the trial court incorrectly determined that Ehrlich
did not owe them a fiduciary duty. Pointing out that Appellants were not parties to the settlement
agreement, Ehrlich counters that Appellants' interpretation fails to give effect to the entire agreement
and leads to the absurd result that the non-settling annuity holders were put in a better position than
the settling annuity holders.

 Standard of Review


 The standard of review for traditional summary judgment is well established. Nixon v. Mr.
Property Management Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the
burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter
of law. Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005); Duran v. Furr's Supermarkets, Inc.,
921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant
will be taken as true in deciding whether there is a disputed issue of material fact. Fort Worth
Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004); Duran, 921 S.W.2d at 784. All
reasonable inferences, including any doubts, must be resolved in favor of the non-movant. Id.;
Duran, 921 S.W.2d at 784. A movant who conclusively negates at least one essential element of a
cause of action is entitled to summary judgment on that claim. Southwestern Electric Power
Company v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). Where the trial court's judgment does not
specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if
any of the theories advanced is meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989);
Garcia v. El Paso Ltd. Partnership, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

Construction of Settlement Agreements


 Settlement agreements are controlled by rules of interpretation and construction applicable
to contracts. Stevens v. Snyder, 874 S.W.2d 241, 243 (Tex.App.--Dallas 1994, writ denied). The
interpretation of an unambiguous contract is a question of law. MCI Telecommunications Corp. v.
Texas Utilities Electric Co., 995 S.W.2d 647, 650-51 (Tex. 1999). In construing a written contract,
the court's primary concern is to ascertain the parties' true intentions as expressed in the instrument. 
Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994); Coker v. Coker, 650 S.W.2d 391,
393 (Tex. 1983). To achieve this objective, courts should examine and consider the entire writing
in an effort to harmonize and give effect to all the provisions of the contract so that none will be
rendered meaningless. Coker, 650 S.W.2d at 393. No single provision taken alone will be given
controlling effect; rather, all the provisions must be considered with reference to the whole
instrument. Id. In harmonizing these provisions, terms stated earlier in an agreement must be favored
over subsequent terms. Id. 

 If the written instrument is worded so that it can be given a certain or definite legal meaning
or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.
Id. However, a contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably
susceptible to more than one meaning. Id. at 393-94. Not every difference in the interpretation of
a contract amounts to an ambiguity. Forbau, 876 S.W.2d at 134. Mere disagreement over the
meaning of a provision in the contract does not make the terms ambiguous. Richardson Lifestyle
Association v. Houston, 853 S.W.2d 796, 800 (Tex.App.--Dallas 1993, writ denied). Likewise,
uncertainty or lack of clarity in the language chosen by the parties is insufficient to render a contract
ambiguous. Preston Ridge Fin. Servs. Corp. v. Tyler, 796 S.W.2d 772, 777 (Tex.App.--Dallas 1990,
writ denied). Whether a contract is ambiguous is a question of law for the court to decide by looking
at the contract as a whole in light of the circumstances present when the contract was entered. 
Coker, 650 S.W.2d at 394. When a contract contains an ambiguity, the granting of a motion for
summary judgment is improper because the interpretation of the instrument becomes a fact issue. Id.

 The settlement agreed provided that El Paso Electric was to pay two-thirds of the recovery,
if any, "to a trust account for the benefit of the Creditor-Defendants and the Claimants, naming
Douglas C. Smith and Herbert Ehrlich, as trustees." Appellants argue that the following sentence
creates a trust and establishes that they are beneficiaries because it refers to all the holders of
approved annuity claims:

 The trustees shall disburse such trust funds as follows: first, to reimburse the
Creditor-Defendants and the Claimants for all costs and expenses paid or advanced
by them in pursuit of their claims in the RICO Action, the Receivership Proceeding
and Cause No. 451,497; and thereafter, to all the holders of approved annuity
claims pro rata in proportion to the original amount of their approved claims
in the Receivership Proceeding. 


But Appellant's interpretation ignores the previous sentence which clearly states that the trust
account is for the benefit of the Creditor-Defendants and the Claimants, namely, the clients of Ehrlich
and Smith. The sentence relied upon by Appellants necessarily refers to the Creditor-Defendants and
Claimants who are holders of approved annuity claims. The more general statement does not control
the specific.

 In support of their argument, Appellants also rely on testimony by the special receiver at the
hearing on entry of judgment. We do not consider his extraneous statements in construing the
settlement agreement because the intent of the parties can be found in the contract itself. The
unambiguous language of the settlement agreement does not support Appellants' interpretation. The
trial court correctly determined that Ehrlich did not owe Appellants a fiduciary duty. We overrule
the sole issue on appeal and affirm the judgment of the trial court.


July 29, 2009 
 

 ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.

Carr, J., not participating

1. This suit was filed in the 53rd District Court of Travis County and is styled El Paso Electric Company v.
First Service Life Insurance Company, et al. (cause number 451,497). It was referred to in the proceedings below as
"Cause No. 451,497." 
2. That suit was removed to the Western District of Texas, El Paso Division and was styled Pedro Meneses,
et al. v. Maury Page Kemp, et al., Civil Action No. EP-90-CA-247H. It was referred to in the proceedings below as
"the RICO Action." 
3. Federal Rule of Civil Procedure 41(a)(1) permits a plaintiff to voluntarily dismiss an action without a court
order where the plaintiff files notice of dismissal before the opposing party serves either an answer or a motion for
summary judgment or where the plaintiff files a stipulation of dismissal signed by all parties who have appeared. 
Fed.R.Civ.P. 41(a)(1).
4. Federal Rule of Civil Procedure 41(a)(2) provides that, except as permitted by Rule 41(a)(1), an action may
be dismissed at the plaintiff's request only by court order on terms the court considers proper. Fed.R.Civ.P. 41(a)(2).